

RECEIVED

JUN 3 0 2006

CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Ronald Earl Geiger
c/o Prisoner No. 13282-006
U.S. Penitentiary Victorville
P.O. Box 5500
Adelanto, California 92301

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>RONALD EARL GEIGER,<br><br>                    Defendant. | Case No. CR-A96-00108-JWS (AHB)(JDR)<br><br>MOTION CLAIMING VOID JUDGEMENT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(h)(3) & 60(b)(4) FOR LACK OF JURISDICTION<br><br>Judge: John W. Sedwick |

**COMES NOW:** Ronald Earl Geiger, the "Defendant" in the above captioned action, and raises jurisdictional challenges *pursuant* to U.S. Supreme Court case: **Gonxalez v. Crosby**, 162 L.Ed.2d 480, 494 (2005), where the Court held:

> ... The Rule also preserves parties' opportunity to obtain vacatur of a judgement that is void for lack of subject-matter jurisdiction—a consideration just as valid in habeas cases as in any other, since absence of jurisdiction altogether deprives a federal court of the power to adjudicate the rights of the parties. **Steel Co. v. Citizens for Better Environment**, 523 U.S. 83, 94, 101, 140 L.Ed.2d 210. 118 S.Ct. 1003 (1998).

A federal Rules of Civil Procedure (FRCP) 12(b)(1), 12(h)(3), 60(b)(4) motion, is a "speaking motion," direct, factual attack against the existence of jurisdiction, not a collateral attack against the conviction and sentence. **Schowalter v. Department of Army** (per curiam); U.S. Appeal Lexis 904 (2002); **Reynolds v. Army and Airforce Exchange Service**, 846 F.2d 746, 747 (Fed.Cir. 1988)(quoting **Land v. Dollar**, 330 U.S. 731, 735 (1947)); **Thornhill Publishing Co., Inc. v. General Telephone Directory Co.**, 594 F.2d 730, 733 (9th Cir. 1979)(quoting **Land v. Dollar**, 330 U.S. 731, 735 (1947)); **Watts v. Pinckney**, 752 F.2d 406, 408-409 (9th Cir. 1985). Lack of jurisdiction may be raised

(1)

by the parties at any time. **Rath Packing Co. v. Becker**. 530 F.2d 1295,
1303 (9th Cir. 1975); **Rivas v. Rail Delivery Service, Inc.**, 423 F.3d
1079, 1082 (9th Cir. 2005); **Steel Co. v. Citizens for Better Environ-
ment**, 523 U.S. 83, 94-95, 101-102 (1998); **Gonzalez v. Crosby**, 162
L.Ed.2d at 494, and cannot be waived. **Stauber v. Cline**, 837 F.2d 395,
397 (9th Cir. 1988). Dismissals for lack of jurisdiction are non-
discretionary and are to be entered whetehr the parties object or not.
**International Video Corp. v. Ampex Corp.**,484 F.2d 634, 636 (9th Cir.
1973). Jurisdiction does not depend on substantive merits of the
case. **Proyectro San Pablo v. INS**, 189 F.3d 1130, 1139 (9th Cir. 1999).
No action, or inaction of the parties can confer jurisdiction upon a
federal court, consent of the parties is irrelevent, principles of
estoppel do not apply, and a party does not waive the requirement by
failing to challenge jurisdiction early in the proceedings **Insurance
Corp. of Ireland v. Compagnie des Bauxites**, 456 U.S. 694, 702 (1982).
The party invoking federal jurisdiction bears the burden of establish-
ing its existence. **Steel Co. v. Citizens for Better Environment**, 523
U.S. at 104, Jurisdiction may not be expanded by judicial decree.
**Kokkonen v. Guardian Life Insurance Co.**, 511 U.S. 375, 377 (1994).
Federal courts are courts of limited jurisdiction and possess only
that power authorized by Constitution and statute. It is to be
presumed that a cause lies outside this limited jurisdiction. Kokkonen
**Kokkonen**, 511 U.S. at 377.

## I

### JURISDICTION

This Court has jurisdiction under Federal Rules of Civil
procedure (FRCP) 12(b)(1), 12(h)(3) and 60(b)(4).

I

## LEGAL CLAIMS

**Claim No. 1:**

> IN DIRECT DISOBEDIENCE OF THE CONSTITUTION AND LAWS OF
> THE UNITED STATES, ACTING ULTRA VIRES, MAGISTRATE JUDGE
> A. HARRY BRANSON CONDUCTED ALL PROCEDURAL AND DISCOVERY
> MOTIONS AND ALL OTHER PRETRIAL PROCEEDINGS IN DISTRICT
> COURT FELONY CRIMINAL CASE NO. CR-A96-00108-JWS(AHB)(JDR),
> WITHOUT AN EXPRESS ADVISEMENT OF CONSTITUTIONAL RIGHTS,
> WITHOUT DEFENDANT'S EXPRESS CONSENT, OR SPECIFIC WAIVER
> OF CONSTITUTIONAL RIGHTS AND WITHOUT STATUTORY
> JURISDICTION

## ARGUMENT

Begining with the inception of federal charges against the

Defendant, until commencement of the jury trial of Defendant, Magist-

rate judge A. Harry Branson heard and decided all procedural and

disacovery motions and all other pretrial matters, then made his

recommendations to District Judge John W. Sedwick. At no time was

Defendant expressly advised of his right to trial, judgement, and

sentencing by a district judge, his right to trial by jury, or did the

Defendant ever expressly consent to be tried by the magistrate judge,

or, in writing or orally on the record, specifically waive trial,

judgement, and sentencing by a district judge. Federal magistrates

are creatures of statute, and so is their jurisdiction. **United States**

**v. Colacurcio**, 84 F.3d 326, 328 (9th Cir 1996). The Federal Magistr-

ates Act, 28 U.S.C. §§ 631-39, governs the jurisdiction and authority

of federal magistrates. **United States v. Reyna-Tapia**, 328 F.3d 1114,

118 (9th Cir 2003). The U S Constitution, Article III, §1, vests

the judicial power of the United States, solely and exclusively in

judges of courts created under Article III of the Constitution. 28

U S C §§ 631-39, shows that a magistrate judge is a court-appointed, adjunct officer of the court, who is devoid of Article judicial power.

The Federal Rules of Criminal Procedure (FRCrP), as adopted in 1944, prescribed uniform procedures to be followed at initial appearances before U.S. Commissioners, who were prohibited from taking a plea at the initial appearance, and were prohibited absolutely from taking a plea in a criminal case. A U S. Commissioner was a U.S. Park Commissioner with        jurisdiction territorily limited to the Federal Reservation that he or she managed  Such jurisdiction was defined by 18 U.S C  § 591. The Federal Magistrates Act of 1968, changed the name from "commissioner" to "magistrate." Since its enactment in 1968, the Federal Magistrates Act has permitted district courts to assign magistrates certain described powers and duties. The Federal Magistrates Act of 1979 (28 U S.C. §§ 631-39), changed the name from "magistrate" to "magistrate judge" and for the first time allowed magistrate judges to conduct civil trials with the consent of all the parties, trials of petty offenses without the defendant's consent, and misdemeanor trials after a careful explanation of the right to trial, judgement, and sentencing by a district judge, the right to a jury trial, but only if the defendant, after such advisement of rights, expressly consents in writing or orally on the record, to be tried by a magistrate judge and specifically waives the right to trial, judgement, and sentencing by a district judge. 28 U.S.C. § 636 is the font of a magistrate judge's jurisdiction. 28 U.S.C. § 636(a)(1) thru (5) provide:

> (a) Each United States magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by his appointment——

(1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts;

(2) the power to administer oaths and affirmations, issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial, and take acknowledgements, affidavits, and depositions;

(3) the power to conduct trials under section 3401, title 18 United States Code, in conformity with and subject to the limitations of that section;

(4) the power to enter a sentence for a petty offense; and

(5) the power to enter a sentence for a class A misdemeanor in a case in which the parties have consented.

28 U.S.C. § 636(b)(3) and (d) provide:

(b)(3) A magistrate judge may be assigned such additional duties **as are not inconsistent with the Constitution and laws of the United States.** (emphasis added)

(d) The practice and procedure for trial of cases before officers serving under this chapter shall conform to rules promulgated by the Supreme Court pursuant to section 2072 of this title.

18 U.S.C. § 3401(a) provides:

(a) When specially designated to exercise such jurisdiction by the district court or courts he serves, any United States magistrate [United States magistrate judge] shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district.

18 U.S.C. § 3401(b) in relevent part provides:

... The magistrate judge shall carefully explain to the defendant that he has a right to trial, judgement, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or a magistrate judge. **The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge and specifically waives trial, judgement, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record.** (emphasis added).

Federal Rules of Criminal Procedure (FRCrP) 5(c)(1996 version) in relevant part provides:

If the charge against the defendant is not triable by a United States magistrate judge, the defendant shall not be called upon tp plead.

(5)

FRCrP 54(b)(4)(1996 version) provides.

>Proceedings involving misdemeanors and other petty offenses are not governed by Rule 58.

FRCrP 58(a) provides:

>These rules apply in petty offenses and other misdemeanor cases and on appeal to the district judge in cases tried by a magistrate judge, unless this rule provides otherwise.

A magistrate judge must fully comply with the Federal Rules of Criminal Procedure, 18 U.S.C. § 3401 and 28 U.S.C. § 636. **United States v. Marcyes**, 557 F 2d 1361, 1367-68 (9th Cir. 1977). Since 1989, the U.S. Supreme Court has twice addressed magistrate judge jurisdiction over civil and criminal matters. In **Gomez v. United States**, 490 U.S. 858, 870 (1989); and **Peretz v. United States**, 501 U.S. 923, 931 (1991), the Supreme Court recognized that in expanding the magistrate's authority, Congress repeatedly has required consent of the parties. As the Supreme Court observed in **Gomez**:

>A critical limitation on this expanded jurisdiction is consent. As amended in 1979, the Act states that "neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate." 93 stat. 634, 28 U.S.C. § 636(c)(2). In criminal cases, the Government may petition for trial before a district judge. "Defendant's charged with misdemeanors can refuse to consent to a magistrate and thus effect the same removal." S Rep. No. 96-74, P. 7 (1979), for the magistrate's criminal jurisdiction depends on the defendant's specific, written consent. **Gomez**, 490 U.S. at 870-71.

It is well-settled canons of statutory interpretation, that it is the duty of the courts~~ya~~ *to enforce* statute according to its plain language, unless it will produce a result contrary to the intent of Congress, in which case, the intent of Congress controls, and specific provisions prevail over general provisions. **United States v. Ron Pair Enterprises**, 489 U.S. 235, 241 (1988); and a federal court, must, if possible, give effect to every word Congress used. **Reiter v. Sonotone Corp.**, 442

U.S. 330, 339 (1979). Another well-settled canon of statutory inter-
pretation is "inclusio unis est exclusio alterius". When Congress
expressly authorized magistrate judges to perform specific duties in
civil and misdemeanor criminal trials, specified the exact manner in
which the parties are to express their consent before those duties
may be performed in those situations, and failed to provide proced-
ures whereby magistrate judges can exercise felony criminal trial
jurisdiction, it was intentional, and Congress made clear the absolute
absence of felony criminal jurisdiction. The canon of statutory inte-
rpretation "ejusdem generis," combined with the limitation placed on
magistrate judge jurisdiction in 28 U.S.C. § 636(b)(3), limits the
application of 28 U.S.C. § 636(b)(1)(A) and (B), and prevents them
from swallowing up the rest of the statute. 28 U.S.C. § 636(b)(1)(A)
applies only to those civil cases where the parties have consented,
ant to those misdemeanor criminal cases where 18 U.S.C. § 3401(b) and
the Federal Rules of Criminal Procedure have been fully complied with.
anything else would offend the Constitution and laws of the United States.
Congress has directly spoken on this precise issue and the intent of
Congress is clear and unambiguous.

> ... First, always, is the question whether Congress has directly
> spoken to the precise question at issue. If the intent of Congress
> is clear, that is the end of the matter; for the court...must give
> effect to the unambiguously expressed intent of Congress. Chevron
> U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S.
> 837, 842-843 (1984).

Because Magistrate Judge A. Harry Branson acted ultra vires when he
tried Defendant's felony criminal pretrial proceedings and made the
recommendations upon which the District Court's decisions are based,
those decisions are void for lack of magistrate jurisdiction, and

the District Court could not proceed to trial based on those decisions.

Claim Np. 2:

> THE DISTRICT COURT ERRED WHEN IT FAILED TO EXAMINE THE
> DOCUMENT WHICH THE PROSECUTION ALLEGES IS THE SOLE SOURCE
> OF FEDERAL JURISDICTION IN THE INSTANT CASE

Legal claim No. 1 is hereby incorporated by reference as is fully restated and reiterated herein. During the final pretrial conference, District Judge John W. Sedwick voiced concern because the indictment fails to provide a nexus to interstate commerce and federal jurisdiction does not exist. Federal prosecutors constructively amended the indictment by immediately alleging that an out-of-state insurance policy and an out-of-state "lease" provides the nexus for federal jurisdiction. However, the U.S. Supreme Court has held that 18 U.S.C. § 844(i) does not cover property that is not used by it's owner for any commercial venture, but only as private property, which is used only as collateral to obtain out-of-state financing (credit) and out-of-state insurance, that such use does not provide the required active use in an activity affecting interstate commerce, and does not provide federal jurisdiction. **Jones v. United States**, 529 U.S. 848, 854-855 (2000). It is well established that many documents are mis-labeled and that labels are not determinative of the transaction. The District Court has an ongoing obligation to examine its own jurisdiction defined and limited by statute, to see that it is not exceeded. District Judge John W. Sedwick merely accepted the prosecutor's allegations, failed to examine the documents to insure they are what they are what it is claimed they are. At the prosecutors first mention of these documents in mid June, 1997, Defendant demanded that defense counsels provide Defendant with copies of them.

On June 12, 1997, defense counsels received the alleged "lease" under discovery page numbers AK 0003913 thru AK 0003938, and in a knowing, intentional, and wilful manner failed to provide Defendant with copies until after Defendant was sentenced and transferred from state jail in Anchorage, Alaska to U.S. Penitentiary at lompoc, California. The copies arrived in Early January, 1998, after those same defense counsels had filed defendant's Appeal No. 97-30356. On page No. AK 0003914, the alleged "lease" shows that Robert Dawson paid $1,252.30 at the inception of the contract, and at page AK 0003922, Ford Motor Credit Co. advanced Robert Dawson $19,784.70 credit on a vehicle selling for $20,932.00. $1,252.30 + $19784.70 = $21,037.00. PageNos. AK 0003922 and AK 0003928 show that Robert Dawson was to pay 36 monthly payments of $447.30, then make a baloon payment of $9,594.68, for a total pay-off amount of $26, 949.78, which constitutes full compliance with Mr. Dawson's contract obligation, whereupon Mr. Dawson would become the owner of the Ford Pickup truck. Page No. AK 0003928 shows that each payment is securred by creating a dollar value security interest in the vehicle for Mr. Dawson. The Uniform Commercial Code (UCC) § 2A-103(j) in relevant part provides:

> "Lease" means a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease.

15 U.S.C. § 1667(5) provides:

> For the purposes of this chapter——
> (5) The terms "security" and "security interest" mean any interest interest in property which secures payment or performance of an obligation.

(9)

15 U.S.C. § 1667(1) in relevant part provides:

> For the purposes of this chapter——
>
> (1) the term "consumer lease" means a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $25,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g).

15 U.S.C § 1602(g) provides:

> The term "credit sale" refers to any sale in which the seller is a creditor. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligation under the contract
>
> ... First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court...must give effect to the unambiguously expressed intent of Congress. **Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,** 467 U.S. 837, 842-843 (1984).

The alleged "lease" is clearly a credit sale contract, not a "lease," and does not provide federal jurisdiction. The district court lacked jurisdiction over the subject-matter and could not proceed in the matter. However, Judge John W. Sedwick adopted Magistrate Judge Army Harry Branson's recommendation, ignored jurisdiction and proceeded to trial. The District Court unconstitutionally and unlawfully tried Defendant for a crime not cognizable in federal court.

**Claim No. 3:**

> **THE NINTH CIRCUIT COURT OF APPEALS ERRED WHEN IT FAILED TO EXAMINE IT'S OWN JURISDICTION AND THAT OF THE DISTRICT COURT.**

Legal Claim Nos. 1 thru 3 are hereby incorporated by reference

as if fully restated and reiterated herein. On October 27, 1998, the Ninth Circuit Court of Appeals panel in Appeal No. 97-30356, made a manifest mistake by failing to examine its own jurisdiction and to see that the district court's jurisdiction defined and limited by statute is not exceeded, made it's decisions based on Magistrate Judge A. Harry Branson's recommendations, and an uncertified, incomplete state court record, findings of fact and conclusions of law that are not part of any state or federal court record.

**Claim No. 4:**

> **JUDGE JOHN W. SEDWICK AND MAGISTRATE JUDGE A. HARRY BRANSON ACTED ULTRA VIRES DURING DEFENDANT'S EVIDENTIARY HEARING**

Legal claim Nos. 1 thru 3 are hereby incorporated by reference as if fully restated and reiterated herein. On may 18, 1999, District Judge John W. Sedwick, in a clear abuse of discretion, unconstitutionally delegated and ceded the judicial power of the United States to Magistrate Judge A. Harry Branson. **See** Docket NO. 213. On May 19, 19999, in a clear usurpation of the judicial power of the United States, Magistrate Judge A. Harry Branson commenced exercising the judicial power of the United States, and conducted all evidentiary hearing related proceedings in the instant case. Defendant did not consent for a magistrate judge to conduct the proceedings and did not waive trial, judgement, and sentencing by a district judge. The District Court's decision is based on Magistrate Judge A. Harry Branson's recommendation, and is void for lack of magistrate judge jurisdiction.

Claim No. 5:

> THE NINTH CIRCUIT COURT OF APPEALS ERRED IN APPEAL NO.
> 99-30393, WHEN IT FAILED TO EXAMINE IT'S OWN JURISDICTION
> AND THE JURISDICTION OF THE DISTRICT COURT AND APPLIED
> PRINCIPLES OF ESTOPPEL TO DEFENDANT'S JURISDICTIONAL
> CHALLENGE.

Legal Claim Nos. 1 thru 4 are hereby incorporated by reference

as if fully restated and reiterated herein. On August 31, 2001, the

Ninth Circuit Court of Appeals, in Appeal No. 99-30393, made a

manifest mistake when it applied principles of estoppel to Defendant's

claim that the alleged "lease" is a sale contract, and does not provide

federal jurisdiction, because Defendant had failed to raise thatclaim

during an earlier proceeding, therefore, foreclosing Defendant's right

to raise and litigate that issue. On February 19, 1998, Defendant

informed the Ninth Circuit Court of Appeals, that defense counsels

had concealed the alleged "lease" from Defendant until after Thanks-

giving of 1997. Defendant was transferred from Anchorage, Alaska to

Lompoc, California the Monday morning after Thanksgiving.

> . .consent of the parties is irrelevent, ..principles of estoppel
> do not apply, ...and a party does not waive the requirement [of jurisdic-
> tion] by failing to challenge jurisdiction early in the proceedings.
> Similarly, a court, including an appellate court will raise lack of
> subject-matter jurisdiction on its own motion. **Insurance Corp. of Ireland
> v. Compagnie Des Bauxites**, 456 U.S. 694, 702 (1982)(internal citations
> omitted).

The panel made its decision based upon recommendations made by a

magistrate judge acting with clear and complete absence of jurisdic-

tion

Claim No. 6:

> ACTING ULTRA VIRES THE DISTRICT COURT REFERRED DEFENDANT'S
> 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT
> SENTENCE TO A MAGISTRATE JUDGE WHO LACKED JURISDICTION TO
> CONDUCT THE PROCEEDINGS

Claim Nos. 1 thru 5 are hereby incorporated by reference as if fully restated and reiterated herein. On September 9, 2002, Defendant filed a timely motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, Docket No. 260. On September 17, 2002, District Judge John W. Sedwick, in a clear abuse of discretion, unconstitutionally delegated and ceded the judicial power of the United States to Magistrate Judge A. Harry Branson. Docket No. 261, page 4, No. 9, which provides:

> This case is referred to Magistrate Judge Branson to hear and decide all procedural or discovery motions and other pre-trial matters, and to give the court his report and recommendation, under Magistrate Rules 4, 5 and 11.

The Court's Article III judicial power is non-delegable, a motion under 28 U.S.C. § 2255 is a continuation of, and a further step in Defendant's criminal case rather than a seperate civil action. **Grady v. United States**, 929 F.2d 468, 470 (9th Cir. 1991). It is, however,to be treated as a habeas corpus application for litigation purposes. The U.S. Supreme Court FRCP 72 "Advisory Committee Notes, 1983 Addition," under "Subdivision (b)" provides"

> This subdicision governs court-ordered referrals of dispositive pretrial matters and prisoner petitions challenging conditions of confinement, pursuant to statutory authorization in 28 U.S.C. § 636(b)(1)(b). This rule does not extend to habeas corpus petitions, which are covered by special rules relating to proceedings under Sections 2254 and 2255 of Title 28.

28 U.S.C. § 636(b)(1)(B) does not extend to §§ 2241, 2254 or 2255. 28 U.S.C. § 636(b)(3) and the canon of statutory interpretation "ejusdem generis" prohibits its extension to any civil action where the parties have not consented, any misdemeanor criminal case where 18 U.S.C.§ 3401(b) and the FRCrP have not been fully complied with, and any felony criminal case, because that would offend the Constitution and

laws of the United States. 28 U.S.C. § 2241 procedures are covered by
statute 28 U.S.C. § 2243, while procedures for 28 u.s.c. §§ 2254 and
2255 are covered by their respective special rules pursuant to Title
28, U.S.C.. Defendant's 28 U.S.C. § 2255 proceedings are void for lack
of magistrate judge jurisdiction. 18 U.S.C. § 3401(b) was not complied
with, the FRCrP were not compled with Defendant did not consent to be
tried by a magistrate judge, nor waive the right to be tried by a
district judge. On November 15, 2002, Magistrate Judge A. Harry
Branson recused himself. Docket No. 270. On November 18, 2002, District
Judge John W. Sedwick delegated and ceded the judicial power of the
United States to Magistrate Judge John D. Roberts. Docket No. 271. On
November 19, 2002, Magistrate judge John D. Roberts clearly usurped
the judicial power of the United States and conducted all furhter §
2255 proceedings in Defendant's felony criminal case and made the
recommendations upon which the District Court's decisions are based.

**Claim No. 7:**

> **DISTRICT JUDGE JOHN W. SEDWICK'S DECEMBER 13, 2005, SUBSTANTIVE
> RECHARACTERIZATIOPN OF DEFENDANT'S FRCP 60(b)(4) MOTION AS A
> SECOND OR SUCCESSIVE § 2255 MOTION IS PROHIBITED BY THE
> U.S. SUPREME COURT''S HOLDING IN GONZALEZ V. CROSBY**

Legal Claims 1 thru 6 are hereby incorporated by reference as
if fully restated and reiterated herein. On November 9, 2005, Defend-
ant submitted a motion under Rule 60(b)(4), FRCP, claiming that his
§ 2255 proceedings are void for lack of magistrate judge jurisdiction,
and attacking only defects in the integrity of the 28 U.S.C. § 2255
proceedings, see Docket No. 328.Contrary to the Supreme Court's hold-
ings in **Gonzalez v. Crosby**, 162 L.Ed.2d 480, 492-493, 494 (2005),
relating to 60(b)(4) and § 2255 motions, and the holdingthat a court's
recharacterization of a pro se litigant's motions may (only) be used

"to avoid an unnecessary dismissal," "to avoid inappropriately stringent application of formal labeling requirements," or "to create a better correspondence between the substance of a pro se motion's claim and its underlying legal basis." **Castro v. United States**, 540 U.S. 375, 381-382, 385 (2003).. Judge Sedwick mischaracterized and misstated Defendant's contentions and quoted off point cases in an attempt to justify magistrate judges conducting § 2255 proceedings, then used abused the court's discretion, holding that: "...a motion under Rule 60(b)(4) must be 'made within a reasonable time,'" and denied Defendant's FRCP 60(b)(4) motion because over two years have passed since since the denial of Appellant's § 2255 motion. See Docket No 329.

> ... The Rule [60(b)(4)] also preserves parties' opportunity to obtain vacature of a judgement that is void for lack of subject-matter jurisdiction **Gonzalez v. Crosby**, 162 L.Ed.2d at 494.

District Judge John W. Sedwick clearly erred and abused the Court's discretion. A FRCP 60(b)(4) motion alleging a judgement is void for lack of (subject-matter) jurisdiction can be submitted at any time, and is timely any time it is submitted, and that time is "a reasonable time." The District Court should have entertained Defendant's FRCP 60(b)(4) motion as it was submitted.

## Claim No. 8:

### THE JUDGEMENT IS VOID FOR LACK OF POLITICAL JURISDICTION

Legal Claim Nos. 1 thru 7 are hereby incorporated by reference as if fully restated and reiterated herein. The Union of States and the United States Government were created by the Articles of Confederation of November 15, 1777, not the Constitution of 1787. See Articles of Confederation, Preamble and Article XIII. The Constitution does not set aside, vitiate, abrogate or void the Articles of

Confederation. See, e.g., the U.S. Constitution, Article VII which provides:

> The ratification of the conventions of nine States, shall be sufficient for the establishment of this Constitution between the States so ratifying the same.

Had only nine of the thirteen original "several States of the Union" ratified the Constitution, the Union would have continued with four of the original States unaffected by the Constitution, bound only by the Articles of Confederation. For the Constitution to void the Articles of Confederation would defeat the purpose of the Constitution. The Constitution does not create a union of states, nor does it create the government, it divides the previously created government into three distinct brances, with distinct powers, divides the legislative branch into two distinct parts with distinct powers, and grants the United States Government **limited** sovereignty, which it did not previously have. The purpose of the Constitution is clearly stated by the Preamble to the Constitution asbeing:

> We the People of the United States, in order to form a more perfect Union, establish justice, insure domestic tranquility, provide for the common defense, promote the general welfare, and secure the blessings of liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America.

The Articles of Confederation are as valid and effective today as they were when they were first ratified. Article XIII provides:

> Every State shall abide by the determinations of the United States in Congress assembled, on all questions which by this Confederation are submitted to them. And <u>the Articles of this Confederation shall be inviolably observed by every State, and the Union shall be perpetual, nor shall any alteration at any time hereafter be made in any of them, unless such alteration be agreed to in a Congress of the United States, and be afterwards confirmed by the legislatures of every state.</u> (emphasis added)

No Congress of the United States has agreed to any alteration of any of any of the Articles of Confederation, and no State Legislature has

confirmed any alteration of any of the Articles of Confederation. None
of the Articles of Confederation have ever been altered. Article IX,
paragraph 1 in relevant part provides:

> The United States in Congress assembled, shall have the sole and
> exclusive right and power of determining on peace and war except in
> cases mentioned in the Sixth Article——of sending and receiving
> ambassadors——entering into treaties and alliances; **provided that no
> treaty of commerce shall be made whereby the legislative power of the
> respective States shall be restrained from imposing such imposts and
> duties on foreigners, as their own people are subjected to, or from
> prohibiting the exportation or importation of any species of goods or
> commodities whatsoever——**....(emphasis added).

Article IX, paragraph 4 in relevant part provides:

> The United States in Congress assembled shall have the sole and
> exclusive right and power of regulating the alloy and value of coin
> struck by their own authority, or by that of the respective States——
> **regulating the trade, and managing all affairs with the Indians, not
> members of any of the States, providing that the legislative right
> of any State within its own limits be not infringed or violated**——....
> (emphasis added).

The U.S. Constitution, Article I, Section 8, clauses 3 and 17 provide:

> The Congress shall have power...(3) To regulate commerce with foreign
> Nations, and among the several States, and with the Indian Tribes;
> ........................
> (17) To exercise exclusive Legislation in all Cases whatsoever, over
> such District (not exceeding ten Miles square) as may, by Cession of
> particular States, and the Acceptance of Congress, become the Seat of
> the Government of the United States, and to exercise like Authority
> over all Places purchased by the Consent of the Legislature of the
> State in which the same shall be, for the Erection of Forts, Magazines,
> Arsenals, dock-Yards, and other needful Buildings;——And

Article II of the Articles of Confederation provides:

> Each State retains its Sovereignty, Freedom and Independence,
> and every Power, Jurisdiction and Right which is not by this
> Confederation expressly delegated to the United States in
> Congress assembled.

The Tenth Amendment to the Constitution provides:

> The Powers not delegated to the United States by the Constitution,
> nor prohibited by it to the States, are reserved to the States or to
> the People.

It is a well established principle of law that the Government of the

United States is foreign as to the several States of the Union, and within the rule of private international law, the penal statutes and the revenue laws of one sovereign will not be enforced within the political jurisdiction/territorial limits of another sovereign. **Solonen v. Farley et al.**, 82 F.Supp. 25, 27 (E.D. Kentucky 1949); **Wisconsin v. Pelican Insurance Co.**, 8 S.Ct. 1370, 1374-75 (1888). As As the U.S. Supreme Court has often held, a States jurisdiction extends over all persons and things within its territorial limits, and it is not the crime committed, but the place where it is committed, and that place must be within the exclusive legislative jurisdiction of the sovereign punishing the crime **United States v. Bevans**, 16 U.S. (3 Wheat) 336, 386-388 (1818); **United States v. DeWitt**, 19 L.Ed. 593, 594, 9 Wall 41, 43-44 (1870); **Pollard et al. v. Hagan et al..**, 11 L.Ed. 565, 571, 3 Howard 212, 223; **New Orleans v. United States**, 9 L.Ed. 573, 602, 10 Peters 662, 737.

> With the exception of the powers surrendered by the Constitution of the United States, the people of the several States are absolutely and unconditionally sovereign within their respective territories....
> The "police power"—by which is meant the internal administration of the States was reserved to the States in the 2d Article of Confederation and in the 10th Amendment to the Constitution of the United States.
> ....
> The 13th, 14th, or 15th Amendments to the Constitution do not impair the supremecy of the police power reserved to the States.....**Curtain v. Benson**, 56 L.Ed. 102, 103, 222 U.S. 78 (1911)(citations omitted).

In **Adams v. United States**, 319 U.S. 312, 87 L.Ed. 1421 (1943), the Supreme Court decided the question of whether the United States had jurisdiction to enforce the criminal laws embraced in title 18, United States Code, on lands within the territorial limits of a State of the Union, where the State had not ceded jurisdiction and the United States had not accepted jurisdiction, and the answer was that the United States lacked jurisdiction. If the crime is comitted in

(18)

the legislative jurisdiction of one of the several States of the Union,
it is outside the legislative jurisdiction of the United States, and
no offense against the laws of the United States has been comitted.
**Bowen v. Johnston**, 306 U.S. 19, 22-30, 83 L.Ed. 455 (1939); 18 U.S.C.
§ 7(1) & (3). The territorial limitation on federal jurisdiction is
well illistrated by the Alaska Statehood Act, Public Law 85-508, in
such provisions as Section 16, where Congress stated:

> "Jurisdiction of all cases pending or determined in the District
> Court for the Territory of Alaska not transferred to the United States
> District Court for the District of Alaska shall devolve upon and be
> exercised by the courts of original jurisdiction created by said State,
> which shall be deemed to be the successor of the District Court for the
> Territory of Alaska with respect to cases not so transferred and, as
> such, shall take and retain custody of all records, dockets, journals,
> and files of such court pertaining to such cases. The files and papers
> in all cases so transferred to the United States district court,
> together with a transcript of all book enteries to complete the record
> in such particular cases so transferred, , shall be in like manner
> transferred to said district court."

Original jurisdiction devolved upon the courts of the State of Alaska.
There can only be one original jurisdiction within an area of land.
Original jurisdiction is exclusive legislative jurisdiction, which is
territorial, which is also known as "political jurisdiction." The
crime Defendant was accused of comitting, was comitted within the
original jurisdiction of the State of Alaska, not a federal district
known as the District of Alaska, see Public Law 85-508, section 11.
The United States has no legislative jurisdiction, therefore, iit is
not an offense against the laws of the United States. Defendant is
entitled to release from federal custody and return of all his prop-
erty.

**Claim No. 9:**

DEFENSE COUNSELS CONSPIRED WITH JUDGE, MAGISTRATE JUDGE,
STATE AND FEDERAL PROSECUTORS TO AID WITH DEFENDANT'S
PROSECUTION AND CONVICTION.

Claim Nos. 1 thru 8 are hereby incorporated by reference as if fully restated and reiterated herein. On March 3, 1994, Defendant was arrested in the State of Washington, by a Snohomish County Sheriff's "Felony Take Down" SWAT Team that included two Alaska State Troopers as armed members of that SWAT Team. On June 24, 1994, Defendant was extradited from the State of Washington to the State of Alaska, accused of building a bomb, placing the bomb in a Ford F-100 pickup truck, detonating the bomb, which destroyed the truck and killed Robert "Hank" Dawson. On June 7, 1995, at an evidentiary hearing, the Alaska suppressed a coerced confession, stayed the proceeding and allowed interlocutory appeal. On July 7, 1995, The Alaska Appeals Court issued a directive order favorable to Defendant. On August 28, 1995, during a continuation of the evidentiary hearing, the Alaska Superior Court held that during Defendant's arrest, detention, finger-printing and interrogation, Defendant had been deprived of important protections, held that it would not matter whether Alaska, or Washington state law is used for determining the issues, the result will be the same, then ruled that Defendant's March 3, 2994 arrest was an unlawful pretext arrest, and that Defendant's detention, even if it would have been lawful, was unlawfully prolonged, then, suppressed the confession for a second time and suppressed all the evidence obtained as a result of the arrest and detention. State of Alaska District Attorney Kenneth "Ken" Goldman immediately appealed the Supeior Court's decision. On October 1, 1996, the Alaska Appeals Court denied the appeal Alaska D.A. Ken Goldman immediately requested the Alaska Supreme Court review both the Superior Court and the Appeals Court decisions. On November 22, 1996, the Alaska Supreme

Court denied the review, and the state court decisions became final except for review by the U.S. Supreme Court.Pursuant to the Uniform Criminal Extradition Act (UCEA), Alaska Statute (AS) 12.70.010 thru 12.70.290, at § 25, AS 12.70.230, which provides:

> A person brought into this state by or after waiver of extradition based on a criminal charge shall not be subject to service of personal process in civil actions arising out of the same facts as the criminal proceeding for which the person is being or has been returned, until the person has been convicted in the criminal proceedings, or, if acquitted, until the person has reasonable opportunity to return to the state from which extradited.

Defendant was awaiting completion of the State of Alaska's failed criminal prosecution, when, without service of any process, or any pretransfer proceedings, Defendant was subjected to this federal prosecution,without extradition from State of Alaska jurisdiction, contrary to the mandates of the UCEA, and Article IV, § 1, §2, clauses 1 & 2, and the due process and equal protection provisions of the 5th and 14th Amendments. **See, e.g., <u>Cuyler v. Adams</u>**, 449 U.S. 433 (1981) Extradition is a civil process, not a criminal procecution. AS 12.70.090 provides:

> A person arrested on a warrant may not be delivered over to the agent who the executive authority demanding the person has appointed to receive the person unless the person is first taken immediately taken before a judge or magistrate of this state, who shall inform the person of the demand made for the person's surrender, and of the crime with which the person is charged, and that the person has the right to demand and procure legal counsel. If the prisoner or the prisoner or the prisoner's counsel states a desire to test the legality of the arrest, the judge or magistrate shall fix a reasonable time to be allowed the prisoner within which to apply for writ of habeas corpus. When that writ is applied for, notice of the application and the time and place of hearing on it shall be given to the prosecuting attorney of the judicial district in which the arrest is made and in which the accused is in custody, and to the agent of the demanding state.

Failure to comply with AS 12.70.290 (UCEA § 10) is a crime AS 12.70. 100 provides:

> An officer or other person who delivers to the agent for extradition of the demanding state a person in custody under the governor's warrant, in wilful disobedience to AS 12.70.090, is guilty of a misdemeanor and,

on conviction, is punishable by a fine of not more than $1,000, or by imprisonment for not more than six months, or by both.

Docket No. 2, dated December 19, 1996, clearly shows Defendant was an Alaska state prisoner. On December 19, 1996, Magistrate Judge A. Harry Branson issued an arrest warrant against the Defendant, Docket No.1, Note 7., and a writ of habeas corpus ad prosequendum, Docket Nos.1, Note 8, and Docket No 4. On December 26, 1996, Defendant was arraigned by Magistrate Judge A. Harry Branson, Docket No. 9. in federal court without service of process, waiver of extradition, and without pretransfer proceedings. The Alaska criminal charges were not dropped until January, 1997, and were dropped without prejudice, with no final resolution, via conviction or acquitted.Defendant was never convicted, or, acquitted and released. When Assistant Federal Public Defenders (AFPD) Kevin McCoy and AFPD John Salemi visited Defendant at the Alaska state jail on December 23, 1996, Defendant gave defense counsels the pages of the Anghorsge Daily New newspaper article, published on December 19, 1996, based on a joint press release by DA. Ken Goldman and Robert C. Bundy, which in relevant part provides:

> Geiger's trial on first-degree murder charges was scheduled to start next year, but those charges probably will be dropped now that the U.S. attorney has taken up the case, Anchorage District Attorney Ken Goldman said. He said he asked federal prosecutors to step in because he had only circumstantial evidence without Geiger's confession.....
>
> Alaska Law requires that officers tape record interrogations of individuals of oeople who are in police custody.....
> ...Cutler said she had no choice but to rule the confession inadmissible.
> Goldman said he started talking to federal prosecutors in December after the Alaska Supreme Court refused to review Cutler's decision.
> Under federal law there is no requirement that an interview be fully taped, Bundy said.....
> Geiger currently being held at Mat-Su Pre-Trial Facility in Palmer. He is scheduled to be arraigned within the week, Bundy said.

By this press release, Ak. D.A. Kenneth Goldman and U.S. Attorney Robert C. Bundy admitted the following:

(22)

1.   The federal prosecution is acting as a tool for Ak. D.A.
Kenneth Goldman to replace a failed state prosecution with a
federal prosecution and prosecute the Defendant regardless of
state law protections.

2.   The federal prosecution was commenced for the purpose of
allowing Ak. D.A. Kenneth Goldman to obtain in the District
Court, a de facto review of the Alaska Supreme Court's decision.

3.   Ak. D.A., U.S. Attorney Robert C. Bundy, Magistrate Judge A.
Harry Branson, Judge John W. Sedwick, and other as yet unknown
state and federal officials, combined, confederated, joined,
colluded, conspired, and agreed together and with one another,
to deprive Defendant of due process and equal protection of the
laws, by and through statutorily prohibited removal of Defendant
from Alaska state custody for federal prosecution, under color
of official right.

Upon Defendant's providing defense counsels with the above cited
newspaper article (Exhibit "A"), Defendant instructed defense counsels
that Defendant wanted (1) a copy of the article submitted as an
exhibit; (2) Ak. D.A. Kenneth Goldman and U.S. Attorney Robert C.
Bundy subpoenad as witnesses and cross-examined about their state-
ments; (3) the constitutional and statutory violations raised; (4) the
issue of a "Bartkus" violation raised; (5) the issue of a "Rooker-
Feldman" violation raised; (6) certified copies of the entire Alaska
court records, i.e., motions, responses, exhibits and transcripts
obtained and submitted as exhibits; (7) copies of the relevant State
of Washington laws, i.e., (a) Washington State Constitution, (b)
Washington State Court Rules, (c) relevant Revised Code of Washington
(RCW)(Titles 9, 10, and 11). Defense counsels failed to obtain or

submit any of the requested items, and even failed to submit the newspaper article or subpoena either Ak. D.A. or the U.S. Attorney cross-examine either of them, failed to raise any of the above issues, and even withheld Docket No. 9 from Defendant, because that would have caused Defendant to examine the magistrate judge's jurisdiction early on and challenge that jurisdiction, and the judge's impartiality. Defense counsels concealed the alleged "lease" upon which federal jurisdiction in this case is predicated, because an examination of that document immediately reveals it to be a credit sale contract that is mislabeled and disguised as a lease. Washington state law would have shown that police and prosecutors have perpetrated fraud upon the courts, comitted perjury to conceal police and prosecutorial misconduct from the outset, and conspired to do so, and combined with the requested Alaska state court records, it would have revealed that (1) no Washington state arrest warrant was ever executed against the Defendant, (2) no Washington state search warrant was ever executed against Defendant's dwelling, its curtilage, or Defendant's vehicle on March 3, 1994 as police and prosecutors claim, (3) on March 3, 1994, Defendant's dwelling and its curtilage were subjected to non-emergancy, non-consensual, warrantless searches and seizures, (4) on March 3, 1994, Defendant's dwelling and vehicle were seized from the private property where Defendant had consent to be, without a warrant to authorize those seazures, (5) that the searches and seizures on March 4, 1994, in Defendant's dwelling and vehicle are statutorily prohibited in Washington state, and (6) Defendant's detention, fingerprinting, and interrogation are prohibited under Washington state law.

## RELIEF REQUESTED

1.  Dismissal of the Federal Indictment for lack of jurisdiction;

2.  Immediate release of Defendant from Federal custody;

3.  The immediate return of Defendant to the State of Alaska;

4.  Immediate return of all of Defendant's property that was given into or taken into Federal custody.

Respectfully Submitted,

Date: June 14, 2006

*Ronald Earl Geiger*

Ronald Earl Geiger

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the attached Motion Claiming Void Judgement For Lack of Subject-Matter Jurisdiction, was mailed, first class, U.S. Mail on June 14, 2006, addressed to the following:

U.S. Attorney
222 West 7th Ave., Mail Box 9, Room 253
Anchorage, Alaska 99513

*Ronald Earl Geiger*